## TURLEY *v.* TURLEY.

### (*Knoxville.* November 2d, 1886.)

1. SUPREME COURT. *Practice. Code (M. & V.), § 3872, construed.*

The re-examination of matters of law and fact appearing in the record, to which an appellant from the decree of a Chancery Court is entitled, under § 3872 (M. & V.) Code, is one to be made according to the well-established course of practice and procedure in Chancery Courts.

Code cited: § 3872 (M. & V.), § 3155 (T. & S.)

2. CHANCERY PRACTICE. *Report of Master on matters of account, weight and effect of.*

Under the well-established rules of practice and procedure in Chancery Courts, matters of account involving the consideration of conflicting evidence, when reported on by the Master, and that report adopted by the Chancellor, are treated as conclusively settled, unless it clearly appear that the report is based upon an error of law, or is the result of a clear mistake, or that the Master has abused or exceeded his authority.

Cases cited and approved: Brown *v.* Dailey, *ante* p. 218; 15 Vt., 185; 50 Vt., 48; 7 Met., 163; 17 Conn., 563; 18 N. J. Eq., 141; Daniel Ch. Pr., 1248–49.

3. APPEAL. *Brings up entire case, when. Decree vacated by is no estoppel.*

A judgment creditor, whose execution had been returned *nulla bona*, sought by suit in equity against his debtor and another, to reach his debtor's equitable interest in land, and also to hold the co-defendant personally responsible for the debt. From the decree of the Chancellor, holding that the debtor had no interest in the land, and that his co-defendant was not liable for the debt, the complainant prosecuted a broad appeal. It was determined in the Supreme Court that both defendants were liable for complainant's debt, but that it was unnecessary to decide what interest, if any, the debtor had in the land.

*Held:* 1. That complainant's appeal brought up the entire case.

2. That the Chancellor's decree, holding that the defendant debtor had no interest in the lands involved, having been vacated by the appeal, and not affirmed by this Court, does not estop the debtor to assert his claim to said land in a subsequent proceeding against his co-defendant.

Cases cited and approved: Grubb *v.* Browder, 11 Heis., 299; Parsons *v.* Kinzer, 3 Lea, 351.

Turley *v.* Turley.

4. RES ADJUDICATA. *Must be specially relied on in equity by plea or answer.*
   The defense of *res adjudicata* must, in *equity*, be specially pleaded in bar, or relied on in the answer; appearing in neither bill, plea, nor answer, it cannot be relied upon in the evidence.

   Cases cited and approved: Duluth Nat. Bank *v.* Knoxville Fire Ins. Co., *ante* p. 76; 1 Dana, 575-76; 5 Ohio, 459; 14 Johnson, 501.

---

FROM KNOX.

---

Appeal from Chancery Court of Knox County. January Term, 1884. W. B. STALEY, Ch.

WAT. M. COCKE, and HENDERSON & JOUROLMON, for Complainant.

II. H. TAYLOR for Respondent.

LURTON, J. This litigation involves a long series of business transactions between two brothers, including two distinct partnerships extending from 1863 to 1880. Two settlements of their matters have been had, neither of which proving satisfactory to complainant, he has filed this bill to set both aside and have a full accounting as to all their business matters.

The first of these settlements was made in 1873, and resulted in the execution by complainant of his note for a balance found against him of $8,555.

In 1876, the complainant being dissatisfied with the first adjustment, another settlement was had of all matters prior to the former settlement, as well as of a number of transactions occurring after the

Turley *v.* Turley.

settlement of 1873. This latter settlement, how-
ever, by admission of both parties, excluded a
partnership in a tan-yard, which had occurred
after 1873. This settlement resulted in the execu-
tion of two notes by the respondent—one for
$3,267, payable to defendant, and another for $3,-
605, which by request of defendant was made pay-
able to one Washington Scott. After this, and
before filing of this bill, considerable payments
were made upon this indebtedness. A second
partnership and a number of other transactions
occurred between them.

Complainant, discontented with the result of the
second settlement between himself and brother, in-
sisted upon a new accounting of all matters. An
arbitration was agreed upon and arbitrators se-
lected, who seem to have undertaken to adjust
these tangled accounts. Precisely what the result
of this third settlement was cannot be satisfactorily
learned; for, before the award was published, com-
plainant filed this bill, in which he assails the cor-
rectness of the settlements of 1873 and 1876, and
seeks to have both set aside and all matters re-
opened and a full account taken between them.
The Chancellor, upon the proof in the cause, set
aside the settlements of 1873 and 1876, and or-
dered a full accounting, and all the matters in
controversy were referred to the Master. Upon
this reference a vast bulk of proof was taken, and
the depositions of complainant and respondent were
each taken several times. The partnership books

and private books and papers of each litigant were subjected to examination, and all the methods known to the law resorted to with a view of at last reaching a result approximately correct. Many exceptions were taken to the report of the Master, neither side being fully content. Upon these exceptions some modification was made in the report of the Master, but a number of exceptions were overruled. From the final decree confirming the report of the 'Master after scrutiny and modification, both parties have appealed.

The exceptions overruled and relied upon here nearly all relate to matters of comparatively small importance concerning the business of the tan-yard partnership of 1873 and a farming partnership of 1878. These exceptions we have examined, and are entirely content with the action of the Master and Chancellor upon the matters involved. The proof upon each of the matters is contradictory, and there is in every case proof to sustain the report. In such case we cannot weigh and balance the proof to ascertain whether the weight of proof is in favor of the account as reported by the Master and adopted by the Chancellor. The report does not affirmatively appear to be wrong upon any of these matters involved in the exceptions, and under the practice of this Court it will not be disturbed by us.

It is insisted, however, that under § 3872 of the Code (M. & V.), that upon an appeal to this Court in a Chancery cause, that the party ap-

pealing is entitled to have a "re-examination of the whole matter of law and fact appearing in the record." This manifestly does not mean to require a re-examination other than according to the well-known and well-established course of procedure in the Chancery Court. In Daniel upon Chancery Pleading and Practice, it is said, concerning Masters' reports upon questions of account, that "all questions and inferences of fact involved in the account are peculiarly fit for the consideration of the Master, and if he adopts the correct principle in point of law, his report will be conclusive, unless it clearly appears from the report, or otherwise, that he has acted under a mistake, or has abused or exceeded his authority." Daniel Chancery Pleading and Practice, Cooper's Edition, Section 1248.

In a note prepared by the learned American editor of the work cited, it is said: "But where a matter of fact, depending upon conflicting evidence and the credibility of witnesses, has been referred to a Master, his decision will not be interfered with on his mere judgment of facts, unless it is a very plain case of error or mistake." Daniel Chancery Pleading and Practice, Cooper's Edition, Section 1299, note 5.

Many authorities are cited to sustain this note, which we have not had opportunity to verify.

In Vermont the finding of the Master seems to be as conclusive as the verdict of the jury. *Mott* v. *Harrington*, 15 Vt., 185; *Howard* v. *Scott*, 50 Vt., 48.

Turley *v.* Turley.

In Massachusetts the Master's report will not be reviewed when adopted by the Chancellor, on appeal. *Von Vranker* v. *Eastman*, 7 Met., 163. See, also, *Holabird* v. *Burr*, 17 Conn., 563; *Holmes* v. *Holmes*, 3 C. E. Green N. J. Eq., 141.

Thus, by the rules of practice and procedure, in matters of account involving consideration of conflicting evidence, when reported upon by the Master, and adopted by the Chancellor, are treated as conclusively settled, unless it clearly appears that the report is based upon an error of law, or is the result of a clear mistake. We have so held at this term of the Court, in an opinion by Judge Snodgrass, and elsewhere reported. See *Brown* v. *Daily.*

The practice, as determined in that case, has long, in effect, been the practice of this Court, though possibly not formulated so fully in any decision, and it is strictly in accord with well-established principles of Chancery procedure, and it would be a total misconception of the purpose and meaning of the statute referred to to assume that the Legislature intended to overturn so salutary a principle of practice and evidence.

The bill of complainant, in addition to these matters of account, seeks to have the defendant declared a trustee for him as to a tract of land described in the pleadings as the "Cocke farm."

This land was originally owned by complainant, and was sold under a decree of this Court to satisfy a vendor's lien thereon. At the decretal sale

the defendant became . the purchaser at the price
of $4,500. The bill charges, and the proof satis-
fies us, that this land was bought under an agree-
ment between complainant and respondent, by which
respondent was to bid in same, and take the legal
title and hold same as a security for the amount
of his bid, and to secure himself against liability
as security for complainant upon certain debts. It
is unnecessary and would be unprofitable to recite
the facts which lead us to this conclusion, and it
is sufficient to say that we are well satisfied that
defendant held said Cocke land only as security
for repayment of purchase-money and as indemnity
against liability as surety for complainant, and
that these liabilities have either all been paid off
by complainant, or constitute, to the extent they
have been paid by respondent, a part of the de-
cree in respondent's favor under the Master's re-
port. The defense suggested by defendent as a
reason why he should be suffered to hold this land
absolutely, growing out of the previous conveyance
by complainant of part of this land by title bond
to Bearden, has no merit in it. The same may be
said as to his disappointment at having to pay the
whole of his bid of $4,500 into court, by reason
of complainant's assignment to him of the surplus
of purchase-money after paying off vendor's lien
proving of no avail. The fact remains that re-
spondent bid this land off for the use and in
trust for his brother; and all that he can now
ask is that he shall get back his purchase - money

and be indemnified against the debts he was liable to pay for his brother.

A more serious objection to a decree in favor of complainant for this land is presented by the defense of a former decree adjudging that complainant had no interest, equitable or otherwise, in this land. The facts raising this defense are as follows: Washington Scott, the holder of one of the notes made by complainant in the settlement between J. B. and W. H. Turley in 1876, sued W. H. Turley and recovered judgment thereon. His execution being returned *nulla bona*, he filed his bill in the Chancery Court against W. H. Turley and J. B. Turley, seeking to recover, among other things, the equitable interest of W. H. Turley in this same Cocke land, and in his bill charged this interest to be about what we have determined, as a matter of fact, it was. By a supplemental bill he also sought to hold J. B. Turley liable for the whole debt. The Chancellor, upon the proof, held that complainant had no interest in this Cocke land, and that J. B. Turley was not bound for this debt upon the ground laid in the amended bill. This decree, if unappealed from or otherwise vacated, would undoubtedly have been, if properly plead, a bar to the relief now sought.

But from this decree Scott prayed and obtained an appeal to this Court. Neither of the Turleys appealed. This, however, was wholly unnecessary. The appeal of Scott was a broad appeal, and necessarily brought up the whole case, and vacated

the entire decree. The relief which he sought, in so far as it related to this branch of his case, could not have been granted without first determining the rights and equities existing between the defendants and growing out of the facts charged in his bill. A decree as between W. H. Turley and J. B. Turley was absolutely essential, for the bill of Scott as to this matter sought only the interest of W. H. Turley in this land. The appeal of Scott, therefore, brought up the whole case and vacated the decree, adjudicating that W. H. Turley had no interest in this land. *Grabb* v. *Browder*, 11 Heis., 299; *Parsons* v. *Kinser*, 3 Lea, 351.

When this bill came on to be heard in this Court, Scott was given a personal decree against J. B. Turley for the whole of his debt, upon grounds unnecessary to mention here, but which are fully stated in the opinion of the Court as reported in 9 Lea. *Washington Scott* v. *W. H. Turley*, 9 Lea, 540.

This broader and more satisfactory relief made it altogether unimportant to determine whether W. H. Turley had any interest in this Cocke land; for whether it was the land of W. H. Turley or J. B. Turley was equally unimportant to this creditor, for both were liable to him, and the land, therefore, subject to his execution. In view of this the Court, in its opinion as announced by Judge Cooper, says:

"The Chancellor granted the complainant all the relief he was entitled to, unless it may be in the

matter of the Cocke land bought by J. B. Turley; but, in view of the liability of J. B. Turley for the whole debt of the complainant, it is unnecessary to consider that branch of the case." *Washington Scott* v. *Turley et al.*, 9 Lea, 641.

We are clearly of opinion that the appeal of Scott vacated the decree below, and that the refusal of this Court to consider this branch of the case leaves the question of the interest of W. H. Turley in this Cocke land open for determination in this case.

But, upon another ground, we are equally clear that this defense of *res adjudicata* is not available. No such defense is made in the answer, nor is any such decree alluded to in the bill. In no way is this defense made by any pleading in the cause.

It is settled that former judgment may be relied upon in the evidence, under the general issue in trials at law. *Estill* v. *Taul*, 2 Yer., 466; *Bugg* v. *Norris*, 4 Yer., 327; *King* v. *Vaughn*, 8 Yer., 60; *Witcher* v. *Oldham*, 4 Sneed, 222; *Warwick* v. *Underwood*, 3 Head, 237.

This rule of pleading at law by no means determines the rule in equity. No rule of equity procedure is better settled than that evidence relating to matters not stated in any pleading cannot be made the foundation of a decree.

"The rule requires," says the learned editor of the fifth edition of Daniel on Chancery Pleading, "the introduction into the bill of every material fact which the plaintiff intends to prove."

"The same rule applies to the answer, and a defendant cannot avail himself of any matter in his defense which is not stated in his answer, though it appear in his evidence." Daniel on Chancery pleading and Practice, 5th edition, 853; *Bank of Duluth* v. *Knoxville Fire Insurance Company*, 1 Pickle, 76.

This general rule of pleading would seem to require the defense of *res adjudicata* to be plead either by special plea in bar, or relied upon in the answer, as all pleas may be which do not go to the jurisdiction of the Court; and so we understand the authorities to be. Daniel on Chancery Pleading and Practice, 5th edition, 659–661, and notes 9–659, and authorities there cited. *Galloway* v. *Hamilton*, 1 Dana, 575; *Ferguson* v. *Miller*, 5 Ohio, 459; *Lyon* v. *Tallmadge*, 14 Johns., 501.

A prayer in the answer, that the pleadings and proofs in the former suit may be made a part of the cause, was held not to present the decree, and that although copied in the transcript, it was disregarded. This is an extreme illustration of the rule requiring this defense to be plead with particularity. *Galloway* v. *Hamilton*, 1 Dana, 576.

The former decree in the cause of *Washington Scott* v. *W. H. and J. B. Turley* not having been plead as a bar to the relief sought by the bill of complainant, either specially or relied upon in the answer, we think cannot be relied upon in the evidence. The decree of the Chancellor will be reversed as to the Cocke land. The complainant

Turley *v.* Turley.

is entitled to recover the same, subject, however, to a lien for the amount of the bid of $4,500 paid by respondent, and interest thereon, the tender being insufficient to stop interest. The legal title will not be divested out of respondent until the decree in his favor in this cause upon the general account is discharged. He is entitled to hold same as security both for the amount of his bid and the general balance as ascertained in this cause. J. B. Turley, having been in possession, must account for rents. Four hundred dollars per year is a reasonable rent, from the proof. The rent will begin January, 1878. He will be credited with taxes paid since his purchase. A decree may be drawn for a sale of the property if complainant does not, within sixty days after adjournment, discharge the lien on said property as fixed by this decree, the sale to be upon a credit of one and two years, free from redemption. The costs will be equally divided both of this Court and the court below. The report of the Commission of Referees is set aside.