S. P. READ *v.* CITIZENS' STREET RAILROAD COMPANY *et al.*

(*Jackson.* April Term, 1903.)

1. **CHANCERY PLEADING AND PRACTICE.** Bill of inter-
   pleader. Objection on account of complainant's interest in sub-
   ject-matter, where and how made.
   The insistence that a bill of interpleader can not be maintained,
   because complainant asserts on the face of the bill an interest
   in the fund to the extent of compensation for his services is
   an objection that must be made by a demurrer interposed in
   the lower court, and such objection can not be made for the
   first time in the supreme court. (*Post, p.* 326.)

2. **SAME.** Bill of trustee for instructions may propound questions
   involving his duties, the trust estate, and the title of himself
   and others to the property.
   A bill filed by a trustee for instructions and directions in respect
   of the disposition of a trust fund in his hands may propound
   questions involving not only his duty within the acknowledged
   limits of the trust, and with reference to the trust estate, but
   also the determination as to the title of the trustee and others
   to the property. (*Post, pp.* 326-327.)

   Cases cited and approved: Daniel v. Fain, 5 Lea, 258; Traphagen
   v. Levy, 45 N. J. Eq., 448.

3. **SAME.** Same. Bill of trustee propounding questions involv-
   ing title of himself and others to the property must make all
   interested persons parties.
   Where a trustee's bill for instructions propounds questions involv-
   ing the determination as to the title of the trustee and others
   to the property, all persons interested in the several questions

Read v. Street Ry. Co.

should be before the court, in order that they may be bound by the court's decree. In their absence, the decree will serve only for the guidance and protection of the trustee in his relations to his trust. Unless such parties are before the court, it is manifest that the court should stay the case until they are brought in, or limit its determination of questions presented to the present need of the trustee. (*Post, p.* 327.)

Cases cited and approved: Daniel v. Fain, 5 Lea, 258; Traphagan v. Levy, 45 N. J. Eq., 448.

4.   **SAME.**   An estoppel, to be available, must be pleaded.

The defense of estoppel must be pleaded in the answer. It is well-settled law in this State that an estoppel in order to be available, must be pleaded. The rule is founded upon the doctrine that evidence relating to matters not stated in the pleadings can not be made the foundation of a decree. (*Post, p.* 330.)

Cases cited and approved: Bank v. Insurance Company, 85 Tenn., 87; Turley v. Turley, 85 Tenn., 260.

5.   **CORPORATIONS.**   Consolidation by purchase; consideration for giving surplus of bonds issued and held to retire previously issued outstanding bonds to stockholders.

Where the stockholders of two corporations agree upon a consolidation, by one purchasing and taking over the entire property and franchises of the other, and issuing stock and bonds to its stockholders in payment thereof, and assuming all the debts of the absorbed corporation and issuing and setting aside $100,000 in bonds for the purpose of retiring $96,000 of outstanding bonds of the absorbed corporation, with an agreement that any surplus of the $100,000 should be divided between the then stockholders of the two corporations, there was a valuable consideration to support the resolution and contract disposing of the surplus. (*Post, pp.* 320, 330-332.)

6. **SAME.** Same. Who can and who cannot object to such dis-
position of corporate property.

Where, in such case as stated in the foregoing headnote, all the
stockholders in both corporations fully agree, and no objection
is made by a dissenting stockholder, nor by an existing creditor,
nor by a subsequent creditor, no other authority can object to
'such disposition of the corporate property, unless it be the State
in some proper proceedings. (*Post, p.* 333.)

7. **SAME.** What transfer of stock carries with it.

All the transfer of stock in a corporation carries with it is the
right to receive dividends, and to participate in corporate meet-
ings, and the remote right to share in the assets on hand at
the dissolution of the corporation. (*Post, pp.* 333-334.)

8. **SAME.** Same. Such surplus accrues to stockholders as
individuals and does not pass with sale of their stock.

The transfer of all the stock in the absorbing corporation after
the consolidation of the two corporations, as in the case stated
in the fifth headnote, does not, by implication, pass the interest
of the stockholders in the surplus as an incident to the stock,
the right to participate in which accrued to them as individuals.
(*Post, p.* 334.)

9. **SAME.** Same. Surplus not abandoned by mortgage approved
by stockholders making no mention of it.

The surplus mentioned and disposed of in the fifth headnote was
not abandoned because the mortgage executed by the absorbing
corporation to secure its bonds, and which was approved and
confirmed by the stockholders of both corporations, made no
mention of the surplus. (*Post, p.* 334.)

10. **SAME.** Same. Surplus does not include appreciation in value
but the excess of the four bonds.

The term *surplus* as used in the fifth headnote refers only to the
excess of the four bonds, and does not include the subsequent
appreciation in value of the new or collateral bonds before the
old bonds were retired. (*Post, pp.* 325, 334-335.)

Read v. Street Ry. Co.

11. **TRUST AND TRUSTEES.** Trustee allowed compensation, counsel fees, and costs out of trust fund on a bill for instructions. The cost of this suit, which was a bill for instructions filed by the trustee, compensation of the trustee, and his counsel fees were paid out of the entire trust fund, which included the appreciation in value above the par value as well as the surplus defined in the tenth headnote. (*Post, pp.* 319, 324, 326, 335-336.)

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.— F. H. HEISKELL, Chancellor.

CARROLL, MCKELLAR & BULLINGTON, for Read.

TURLEY & TURLEY, H. D. MINOR, GEORGE H. GILHAM, JOHN H. WATKINS, S. M. NEELY, THOMAS M. SCRUGGS AND J. L. GOODLOE, for Street Railroad Company *et al.*

MR. JUSTICE MCALISTER delivered the opinion of the Court.

The questions presented upon the record relate, first, to the right of a trustee to compensation, including reasonable counsel fees, and, second, the right of ownership in a certain surplus arising under the administration of a trust—whether it goes to defendant street railroad

company or to the original stockholders in its predecessor companies. The facts necessary to be stated are that in 1886 two rival street railroad companies were being operated in the city of Memphis, one known as the Memphis City Railroad Company and the other the Citizens' Street Railroad Company. A consolidation of the two companies was agreed upon by the respective stockholders; that is to say, it was agreed that the Citizens' Street Railroad Company should purchase and take over the entire property and franchises of the Memphis City Railroad Company, excepting that the latter company should retain its corporate existence. The capital stock of the Memphis City Company was $500,000, and that of the Citizens' Company $250,000. Each company at the time had an outstanding bonded indebtedness. That of the Memphis City Company amounted to $96,000, while that of the Citizens' Street Railroad Company was $200,000. The stockholders of the Citizens' Company adopted resolutions, which were accepted by the Memphis City Company, providing that the Citizens' Company should increase its capital stock from $250,000 to $1,000,000, and issue $1,000,000 of 6 per cent. bonds. One-half of the stock ($500,000) and one-half of the new bonds ($500,000) were to be given to the stockholders of the Memphis City Company in payment of the purchase price of its properties and franchises. The resolution then recited, viz.: "The remaining $500,000 of bonds will be used as follows: $200,000 will be placed in the hands of S. P. Read, of Memphis, Tennessee, as

trustee, for the purpose of retiring the $200,000 of first mortgage bonds of the Citizens' Company now outstanding, and $100,000 for the purpose of retiring $96,000 of first mortgage bonds of the Memphis City Railroad Company now outstanding, any surplus of the $100,000, should there be a surplus, to be equally divided between the present stockholders of the Memphis City and the Citizens' Street Railroad Companies, and $100,000 in payment of money and property advanced by the stockholders of the Citizens' Street Railroad Company, aforesaid, and $100,000 to be retained in the treasury, to be used for permanent improvements."

It was then provided that the remainder of the new issue of stock, $250,000, should be apportioned among the original stockholders of the Citizens' Company, in order to equalize the ownership of stock among the stockholders of each company. It appears that this contract was formally carried out, and a deed executed by the Memphis City Company conveying all its properties to the Citizens' Company. The Citizens' Company increased its capital stock to $1,000,000, and issued the $1,000,000 of bonds, in accordance with the provisions of the resolution, and the stock and bonds were distributed among the stockholders as stipulated. Tht $200,000 of outstanding first mortgage bonds owing by the Citizens' Company were exchanged for new bonds. It appears, however, that the $96,000 of first mortgage bonds owing

by the Memphis City Company were not exchanged. Only six of said bonds were funded. It appears that this series of bonds were worth more on the market than the new bonds. Besides, they were inaccessible, and for these reasons were not retired. Hence it appears that $94,000 of the new bonds were left in the hands of S. P. Read, trustee, for the purpose of funding or retiring $90,000 of Memphis Company bonds, due September 1, 1901, and said trustee continued to hold said bonds up to the bringing of this suit. It appears that in December, 1888, the stockholders of the amalgamated companies sold all their stock to Holmes, Honore & Hinckley, of Chicago, for $1,000,000, its par value. In the year 1897 the Citizens' Company (by their assignees, Holmes, Honore & Hinckley) conveyed all its property to A. M. Billings, who organized the present company (the Memphis Street Railroad Company), for the consideration of $200,000 and the assumption of all indebtedness. It now appears that the bonds left in the hands of S. P. Read are worth a premium of 25 cents on the dollar, and are more than sufficient to liquidate and retire the $90,000 of underlying bonds of the Memphis City Company due September 1, 1901, and will leave a surplus of $25,000. The principal controversy now presented is over this surplus.

The present bill is filed by S. P. Read, trustee, in which it is alleged that Mr. Jones, representing the Memphis Street Railway Company, the successor of the two old companies, had called upon him, and stated, in

effect, that his company claimed the right, upon the maturity of the $90,000 unpaid Memphis City bonds to pay off said bonds, and then to take from him, the trustee, the $94,000 of Citizens' bonds so held in trust; that shortly after this Mr. Napoleon Hill stated to him that, as one of the stockholders of the Citizens' Company, he (Hill) would insist upon his right to a pro rata of the surplus in the trustee's hands over and above what was required to retire the old Memphis City bonds; that about the same time the attorney for the executrix of Col. Frayser's estate warned him (the trustee) that the executrix would look to him for the share of said surplus belonging to her decedent's estate.

The bill then averred that the bonds in his hands, of the par value of $94,000, were worth in the market a premium of about twenty-five per cent., so that the value of the bonds in his hands exceeded the amount necessary for the retirement of the underlying bonds by nearly $25,000; that he was advised that this excess constituted a "surplus" within the meaning of the resolution of December 29, 1886, creating the trust in him; that he was advised that he was not bound to settle and decide upon the conflicting claims to said surplus already stated, but that he was entitled to file this bill, and have the court instruct him as to his duties under said trust. Accordingly the trustee presented the history of the trust and the facts connected with it, and asked that he be instructed as to the disposition of said surplus and as to his duties under the trust.

All persons having an interest in the matter were made defendants, and the bill prayed that they be required to come in and propound their claims to the surplus. The trustee also averred that he was entitled to compensation as trustee and to counsel fees, and asked that the same be fixed, and made a charge upon the funds in his hands.

The various stockholders of the two old companies, who were such at the time of the resolution of December 29, 1886, answered the bill, and set up their respective claims to the surplus.

The defendant railway companies filed an elaborate joint and separate answer, in which it is claimed that the surplus in question belongs to the present company, the Memphis Street Railway Company.

It avers that the intention of the parties, upon the deposit of the bonds with Mr. Read, was that the bonds should be exchanged bond for bond, and that this was done in the case of six of the bonds.

It avers as to the remainder of said bonds deposited with Mr. Read (amounting to $94,000 face value) : "The same have never become, and are not now, outstanding obligations of the Citizens' Street Railroad Company, or of its successor, the Memphis Street Railway Company," and "that the outstanding bonds of the Memphis City Railroad Company, dated September 1, 1881, which were never retired, and which the holders thereof refused to retire by exchanging the same for a similar amount of bonds dated January 1, 1887, of the Citizens'

Street Railroad Company, have become, by reason of the conveyances aforesaid and the facts in this answer set up, the obligations and indebtedness of the Memphis Street Railway Company. And this respondent, the Memphis Street Railway Company, alleges that it is ready and willing, and hereby offers, to pay said 90 bonds, aggregating the sum of $90,000, at the maturity thereof, and all accrued interest thereon, to wit, September 1, 1901."

It is conceded that the facts are practically undisputed, and are shown by the proof to be as above set out.

The chancellor held that the trust in Mr. Read was a valid one; that the "surplus" mentioned in the resolution was the difference between the market value of the bonds in the trustee's hands on September 1, 1901, and the sum necessary on the day to pay off and retire the $90,000 of underlying bonds; that this surplus belonged to those who were stockholders on December 29, 1886; and that a reference should be had to ascertain who were such stockholders, what the amount of surplus was on September 1, 1901, and what were the proper fees for the trustee and his counsel.

There were no exceptions to the report, except as to the fees allowed. Upon the hearing of these exceptions, final decree was rendered, directing the trustee to sell the $94,000 of bonds in his hands, and out of the proceeds to pay himself and counsel the fees allowed them (fixed at $3,000 and $1,000, respectively), to pay the costs of the cause, to pay the

defendants who were stockholders of the two old companies on December 29, 1886, $————, representing the surplus, with interest thereon from September 1, 1901, less the amount of costs and fees just named, and to pay the remainder to the Memphis Street Railway Company. Leave was given to the latter company, however, to deposit with the trustee a sum of money equal to the amount of said surplus and interest, and, upon doing so, to receive from him the $94,000 of bonds.

From so much of this decree as refused the trustee and his counsel the amount of fees claimed by him the trustee prayed an appeal. All the defendants appealed from that part of the decree allowing said fees. The Memphis Street Railway Company appealed from the entire decree.

It is strenuously insisted in this court by counsel for defendant company that the present bill is a bill of interpleader, and cannot be maintained, for the reason that complainant asserts on the face of the bill an interest in the fund in question, to wit, compensation for his services. It would be a sufficient answer to this objection to say that no demurrer was interposed to the bill upon the ground stated, and such objection could not be started for the first time in this court. But we think it quite clear that this bill is essentially a bill instituted by the trustee for instructions and directions in respect of the disposition of a trust fund in his hand. As stated in American & English Encl. of Law: "It is always the trustee's privilege to ask and receive of the

court having proper jurisdiction directions as to the policy he shall pursue in the conduct of the trust, and as to the construction to be placed upon the instrument of trust on which he acts. And it may be added that in all questions of doubt it is his duty to make this application to the court." 27 Amer. & Eng. Encl. Law (1st Ed.), 151.

Again, in the case of *Traphagen* v. *Levy*, 45 N. J. Eq., 448, 18 Atl., 222, the rule is stated thus: "Where the duty of the trustee is involved in doubt, it is his right, and he should receive the aid and direction of a court of equity to the extent that his interests may require. The questions propounded may involve not only the duty of the trustee within the acknowledged limits of the trust, and with reference to the trust estate, but also the determination as to the title of the trustee and others to the property. In the latter case all persons interested in the several questions should be before the court, in order that they may be bound by the court's decree. In their absence the decree will serve only for the guidance and protection of the trustee in his relations to his trust. It is manifest that, unless such persons are before the court, the court should stay the case until they are brought in, or limit its determination of questions presented to the present need of the trustee." See, also, *Daniel* v. *Fain*, 5 Lea, 258. As already seen, the contention of the stockholders that this surplus belongs to them is based largely on the language of the resolution adopted by the Citizens' Company, which was

the basis of the consolidation of the two companies. The language of the original resolution adopted December 26, 1886, was, viz.: "And the remaining $100,000 (of new bonds) to be deposited with S. P. Read, trustee, for the purpose of retiring the $96,000 of bonds outstanding against the Memphis Company; any surplus of this $100,000, should there be a surplus, to be equally divided between the present stockholders of the parties of the first and second parts."

It appears that, as originally drafted, the contract provided that the surplus of the $100,000 should go entirely to the Citizens' stockholders, but the Memphis Company stockholders added this provision, viz.: "It is understood that we sign with the agreement that, if there is anything left of the $100,000 set aside to take up the $96,000 of bonds as mentioned, then this to be equally divided between the parties of the first and second parts."

As amended, the contract was then signed. The phraseology was afterwards slightly changed in the resolution adopted by the Citizens' stockholders embodying the above contract, so as to read: "Any surplus of this $100,000, should there be a surplus, to be equally divided among the present stockholders of the parties of the first and second parts."

But this change was immaterial, and did not affect the substance of the transaction. The insistence now made on behalf of the stockholders is that this surplus belongs to them.

It is insisted, however, on behalf of appellant railroad company, that in December, 1888, all of the stockholders of the consolidated corporation, comprising all those persons who had been stockholders both of the Memphis City and the Citizens' Street Railroad Companies at the time the latter purchased the property of the former, executed a power of attorney to Messrs. R. Dudley Frayser and Sam Tate, Jr., authorizing said attorneys to sell the entire capital stock of the Citizens' Company, and in pursuance of said authority the sale thereof was duly made to Messrs. Holmes, Honore & Hinckley, of Chicago, for the consideration of $1,000,000 in cash. Said contract of sale, amongst other things, contains the following stipulation: "It is further understood that said Citizens' Street Railroad Company has a nominal bonded indebtedness of $1,000,000; that $800,000 of said bonds have been issued, and are in the hands of the holders for value. It is further understood and stated as a fact that of a former issue of the Memphis Railroad Company $96,000 of bonds are now outstanding in the hands of holders for value as a lien upon the property of the Memphis City Railroad; that, to secure the payment of the last named $96,000 of bonds, $100,000 of bonds of the Citizens' Street Railroad Company have been deposited with S. P. Read, trustee, and $100,000 of bonds of the Citizens' Street Railroad Company remain in the treasury of said company as an asset, so that the real amount of liability of said Citizens' Street Railroad Company is $896,000; that said Street Rail-

road Company has got no other mortgage bond, note, or other evidence of liability against said property outstanding, and that it has no floating debt, except current operating expenses."

On this branch of the case, it is insisted on behalf of the defendant Street Railroad Company that the stockholders are estopped from setting up any claims to said surplus by their contract, conduct, and representations at the time they and their associates sold the $1,000,000 of stock in the new Citizens' Street Railroad Company to Holmes, Honore & Hinckley.

It is a sufficient answer to this position to say that no estoppel was pleaded by the defendants in their answers. The law is well settled in this State that an estoppel, in order to be available, must be pleaded. The rule is founded upon the doctrine that evidence relating to matters not stated in the pleadings cannot be made the foundation of a decree. It is necessary, therefore, to introduce in the bill every material fact which complainant intends to prove. *Turley* v. *Turley*, 85 Tenn., 260, 1 S. W., 891; *Natl. Bank* v. *Insurance Co.*, 85 Tenn., 87, 1 S. W., 689, 4 Am. St. Rep., 744; *Daniel's Chancery Practice* (5th Ed.), 583.

The contention now made on behalf of the Memphis Street Railway Company is that it is the successor of the defendants, the Memphis City Railroad Company and the Citizens' Street Railroad Company, and is thereby authorized to discharge the outstanding bonds

of the old Memphis City Railroad Company which matured on September 1, 1901, and to receive from the complainant, as trustee, the $94,000 of bonds of the Citizens' Street Railroad Company, now in his hands, for the reasons: (1) That the provision made in the resolution December 29, 1886, for the distribution of the surplus, was an attempt by the stockholders and directors of said two corporations, and especially the Citizens' Street Railroad Company, to issue mortgage bonds, and to divide a portion of them, or the proceeds of a portion of them, among the stockholders as a gratuity, and without receiving anything as a consideration therefor. It is insisted that said arrangement was *ultra vires,* contrary to public policy, and will not be enforced by a court of chancery. (2) It is insisted that the said provision for the distribution of surplus contained in the resolution of December 29, 1886, even if originally valid, was promptly abandoned, so far as said surplus was concerned, by all the stockholders in the said Memphis City Railroad Company and the said Citizens' Railroad Company. It is insisted that this is shown affirmatively from the mortgage executed by the Citizens' Street Railroad Company to secure said bonds, in which no mention whatever is made of said surplus, and the said mortgage was then approved and confirmed by a unanimous vote of all the stockholders in both of said companies. (3) It is insisted that, if said trust as to the surplus was originally valid. and if the individuals who, on the 29th day of December, 1886, were the owners of the cap-

ital stock of the said two companies, were entitled to said surplus, then all their rights thereto passed from them to Messrs. Holmes, Honore & Hinckley (under whom the stockholders of the defendant Memphis City Railway Company now claim) by a sale to the latter by the former of the $1,000,000 of the capital stock of the Citizens' Street Railroad Company in December, 1888. It is insisted that when this sale was made it was upon the positive statement, which was made a part of the contract of sale, that no such surplus existed, and that the entire bonded indebtedness of said Citizens' Street Railroad Company was $896,000. It is then averred that the old stockholders would, by said representations, which they made a part of the contract, be estopped from now setting up any claim or title thereto. (4) It is insisted that, if the alleged trust as to said surplus claimed to have been created in said resolution of December 29, 1886, was valid, the court below erred in holding that the surplus referred to was the difference between the value on September 1, 1901, of the $94,000 of bonds of the said Citizens' Street Railroad Company in complainant's hands and the $90,000 in money, the amount which it required to pay off the old Memphis City Railroad bonds which matured on September 1, 1901. It is insisted that the chancellor should have held that said surplus consisted solely of the excess of the four bonds placed in complainant's hands over and above the number of outstanding bonds of the Memphis City Railroad Company.

Read v. Street Ry. Co.

In answer to the proposition that the reservation of the surplus to the stockholders was in the nature of a gratuity, and therefore contrary to law, it suffices to say:

First. That upon the consolidation of the two companies the Memphis Company stockholders transferred most of their stock to the Citizens' Company, and they may rightfully claim that their interest in the surplus belonged to them as a definite part of the purchase money due them for the transfer of their stock and said corporate property of the Memphis City Company.

Second. It was a matter as to which all the stockholders in both companies fully agreed, and the validity of the transaction cannot be impeached by the present defendants. No objection is made by a dissenting stockholder nor by an existing creditor, nor by a subsequent creditor, and we know of no other authority who may object to the disposition of the corporate property, unless it be the State in some proper proceeding.

Third. The assumption by stockholders of all the debts by both companies, and the mutual consent of the parties to a union of interest, would also furnish a valuable consideration to support the resolution disposing of the surplus.

In respect of the second proposition above, it must be conceded there was no express transfer of the surplus in the sale made in December, 1888, and we are of opinion the interest of the stockholders in the surplus did not, by implication, pass with the transfer of the stock. As to the Memphis City stockholders it was part of the

purchase money, and as to both it was part of the consideration of the trade upon which the two companies were consolidated.   If the transfer of stock operated to pass this part of the consideration of the original trade, it could with equal propriety be argued that it operated a transfer of all the purchase money; that is, the $500,-000 of bonds and the $500,000 of stock.   All that the transfer of stock carries with it is the right to receive dividends, and to participate in corporate meetings, and the remote right to share in the assets on hand at the dissolution of the corporation.

We are further of opinion the right to participate in this surplus was reserved to the original stockholders as individuals, and that when they parted with their stock to the assignors of defendant company the right to the surplus did not pass to the transferee as an incident to the stock.

We are further of opinion that none of the parties to the contract of December 6, 1888, intended thereby to change the ownership of the surplus, or had such matter in contemplation.   Nor do we think that the right to the surplus was abandoned simply from the fact the mortgage executed to secure the bonds in question made no mention of the surplus.

The next question presented for our determination is, what was meant by the term "surplus," employed in the resolution of December 29, 1886?   We are of opinion that the chancellor erred in holding that the surplus referred to was the difference between the value on De-

cember 1, 1901, of the $94,000 of the bonds of the said Citizens' Street Railroad Company in complainant's hands and the $90,000 in money, the amount which it would require to pay off the old Memphis City Railroad bonds, which matured on September 1, 1901.

We are of opinion that the surplus within the contemplation of the parties comprised alone the excess of the four bonds deposited with complainant over and above the number of underlying bonds of the Memphis City Railroad Company. We think that the purpose was to exchange bond for bond, and that the only surplus in the minds of the parties at that time was the excess of four bonds. We cannot think that the market appreciation of the collateral bonds that would mature on September 1, 1901, was ever within the contemplation of the parties in providing for the disposition of the surplus when the resolution of December 29, 1886, was adopted. The record discloses that the collateral bonds at the time were below par, and hence the surplus of four bonds was deposited with the trustee so as to insure the exchange with the old bonds. If this excess of bonds was not needed to effect the exchange, it was contemplated by the parties that they should be returned to the original stockholders. In our opinion, the parties at the time had in mind no other surplus.

The remaining question is in respect of the compensation of the trustee and his counsel. As already stated, the chancellor allowed the trustee the sum of $3,000 as

compensation and $1,000 to his counsel for filing this bill.

We have carefully considered all the testimony on this subject, and have reached the conclusion that $2,000 would be a reasonable compensation to the trustee for his services, and in this particular the decree of the chancellor is modified. While we think the amount allowed his counsel is full compensation, we cannot say that it is excessive.

The result is that the defendant Memphis Street Railway Company, having paid off and discharged the underlying bonds of the Memphis Street Railroad Company, is entitled to take down the collateral bonds of the Citizens' Street Railroad Company deposited with S. P. Read as security. The costs of the case, compensation of the trustee, and his counsel fees will first be paid out of the entire trust fund, and the balance of the surplus of the four bonds will be paid over to the original stockholders or their counsel.