## BRIER HILL COLLIERIES et al. v. V. H. PILE et al.

Middle Section. September 28, 1926.

Petition for Certiorari denied by Supreme Court May 7, 1927.

1. Quieting title. Complainant must show itself to be the true owner of the legal title before it can maintain suit to remove a cloud from the title to its land.

In an action to remove a cloud from the title to real estate it is necessary for the complainant to show itself to be the true owner of the legal title before a chancery court has jurisdiction to award the relief sought.

2. Courts. Jurisdiction. Court having jurisdiction to remove cloud from title has jurisdiction to determine other questions.

A court of chancery having jurisdiction of a case to remove cloud from title has also jurisdiction to determine other questions of title properly raised.

3. Judgment. Res Adjudicata. Under Shannon's Annotated Code, sec. 5000, a judgment in ejectment is conclusive upon the parties against whom it is recovered, excepting parties under disability at the time of the recovery.

Adjudication of title to land in a former action of ejectment is binding upon the same parties in a subsequent action involving title.

4. Deeds. Evidence. Where a party claims to be an innocent purchaser of real estate the burden of proof is on the holder of unrecorded deeds to show that he had notice thereof.

In an action to remove a cloud from title to real estate where plaintiff claimed to be innocent purchaser and a deed to defendant then of record had been held to be void because of the failure to describe the property, held that in denying that plaintiff was an innocent purchaser the burden was on the defendant to show notice of it.

5. Reformation of instruments. No reformation of an instrument can be had against a bona fide purchaser for value and without notice.

A bona fide purchaser for value without notice is not subject to the equity of a party injured by mistake and there can be no reformation of an instrument as against him.

6. Deeds. A deed can not be corrected so as to bar the rights of intervening parties.

In an action to remove a cloud on real estate where a deed to defendant had been determined void in a previous case, and later an action was brought in the Federal court to have a new deed executed by the heirs of the original grantor and certain adult heirs of the original grantor joined in executing such a deed to the defendants, held that plaintiff having acquired title prior to this action its right could not be affected by such a suit.

7. Deeds. Description. Parol evidence inadmissible in aid of description.

The rule is that if the description is on its face so indefinite as to be applicable to any tract of land, then parol evidence is not admissible at all, because its effect is to supply by parol a material part of the agreement which the statute of frauds requires to be in writing.

8. Deeds. Description. When exceptions in a description are indefinite the deed carries title to all the land described.

When a description in a deed definitely describes a larger tract and then excepts from the conveyance certain indefinite tracts, title to all lands

within the boundary described passes to the grantee and the burden is on one attacking the title to prove that there is a superior outstanding title to the exceptions in dispute. This is a rule of property in Tennessee.

9. **Deeds. It is the duty of courts to uphold deeds if possible by any reasonable construction.**
It is the duty of the court to uphold the deed if by any reasonable construction it is possible to ascertain from the description the property it was intended by it to convey and a liberal construction should be given to afford a basis for validity.

10. **Corporations. Stockholders and creditors alone can object to an ultra vires deed of a corporation.**
Where a corporation transfers its property to another corporation for the consideration of capital stock, and no objection is made by a dissenting stockholder, nor by an existing creditor, nor by a subsequent creditor, no one else can object to the disposition of the corporate property unless it be the State in some proper proceeding.

11. **Deeds. The conveyance of a part of a large tract of land left after exclusions, does not convey a proportional part of the large tract.**
Where the deed described a large tract of land and then certain indefinite exceptions were made, held that the deed did not convey a proportional part of the large tract, but conveyed all the land described in the tract to which prior conveyance could not be shown.

12. **Limitation of actions. Evidence. Where party lives on a small part of a large tract it is a sufficient possession under the statute of limitation.**
Where the evidence showed that complainant, having registered deed to a large tract of land, leased that tract to a tenant, who lived on and cultivated a small farm therein, held that this was open, notorious, adverse possession by which title to the large tract would be acquired under the statute of limitation of seven years.

13. **Limitation of actions where two persons jointly occupy land the occupancy inures to the benefit of the one holding the legal title.**
Where two parties jointly occupy land the one having title and the other not, the occupancy inures to the benefit of the one holding the legal title. There can not be, in legal contemplation a possession, either actual or constructive, of the same identical tract of land in two adverse claimants at the same time.

Appeal from Chancery Court, Fentress County; Hon. W. R. Officer, Chancellor.

Affirmed.

Roberts and Roberts, of Nashville, John F. McNutt, of Rockwood, and Joseph Higgins, of Nashville, for appellants.

J. T. Wheeler, of Jamestown, and Fowler and Fowler, of Knoxville, for appellees.

DeWITT, J. The bill in this cause was brought by Brier Hill Collieries, Stearns Coal & Lumber Company, and trustees under certain deeds of trust against the widow and heirs-at-law of S. H. Pile, deceased, the devisees of A. L. Crawford, and others, to remove cloud from title and enjoin an action of ejectment in the circuit court of Fentress county. The land involved comprises about forty-five hundred acres bounded on the south by the parallel of latitude

of 36 degrees, 30 minutes, known as the Matthews line as it was surveyed by Thomas J. Matthews in the year 1826 for the State of Kentucky in order to mark the southern boundary of the strip of land about seven miles wide from north to south running from the Matthews line to the Walker line, which is the present boundary between Tennessee and Kentucky. This is the territory in which the proprietary right was granted to the State of Kentucky under the Convention of 1820 between the two States settling a dispute as to the true boundary line. See, Sharp v. Van Winkle, 12 Lea, 15; Russell v. American Association, 139 Tenn., 124, 201 S. W., 151.

The land herein involved is part of a large boundary of land in Fentress, Pickett and Scott counties known as "the Big Survey," and granted by the State of Kentucky to F. P. Stone and others under Land Office Warrant No. 630, containing 123,989 acres. Upon their own application the bill was dismissed as to the complainants, Stearns Coal & Lumber Company and the First Trust & Savings Bank, trustee; leaving the controversy between the Brier Hill Collieries and the aforesaid defendants.

The land involved in this cause was involved in the action of ejectment brought by Ward R. Case et al, v. Brier Hill Collieries et al., in the chancery court of Fentress county, in which case the opinion of the Supreme Court is reported in 145 Tenn., 1 et seq. The complainants in that cause are defendants to the bill in this cause. A careful consideration of the opinion of the Supreme Court, delivered by its present Chief Justice, together with the decree of that court in all things affirming the decree of the Chancellor, is necessary to an understanding and determination of the issues here presented. The complainants in this cause insist that the decision of the Supreme Court in Case v. Brier Hill Collieries was conclusive of the issues now before us. A transcript of the record of that cause, including the opinion and decree of the Supreme Court, is a part of the record in this cause. In that cause it was adjudged that a description in a deed of March 17, 1896, of the devisees of A. L. Crawford to S. H. Pile, "in Scott county known as the Jim Smith tract," was invalid, as it did not refer to a definite parcel of land, there being several other tracts known as Jim Smith tracts; and that parol evidence was not admissible to supply the description, which the statute of frauds requires to be in writing. On July 12, 1895, S. H. Pile, the ancestor of these appellants, entered into an agreement in writing with A. B. Bradford, as agent for the heirs of A. L. Crawford, deceased, which agreement and the said deed of the Crawford heirs to S. H. Pile and the deed of S. H. Pile to the Crawford heirs pursuant thereto are set forth in 145 Tenn., pages 4 to 8. The agreement was made in settlement of all issues between the Crawford heirs and S. H. Pile in the case of A. L. Crawford v.

Anderson Smith, et al., in the United States Court at Knoxville as to their respective interests in the lands included within the bounds of the "Big Survey." Pursuant to said agreement, S. H. Pile conveyed to the Crawford heirs all of his interest in "the Big Survey" excepting seven tracts, the fourth of which was designated, "known as the Jim Smith tract." As aforesaid, the Crawford heirs conveyed to S. H. Pile all their interest in these tracts, the fifth tract being "in Scott county known as the Jim Smith tract."

In Case, Trustee v. Brier Hill Collieries, supra, the land sued for was claimed by the complainants therein to be "the Jim Smith tract" referred to in said papers. The said parties, defendants and appellants here, insist, as they did in that case, that "the Jim Smith tract" is a tract of land in Fentress county said to contain fifteen thousand acres. These defendants insist that they are the owners, by descent from S. H. Pile, of said tract, including the lands herein involved. They do not question the finality of the adjudication of the Supreme Court that the said description in said deed of March 7, 1896, was void, but they deny that complainants have established a good and perfect title to the land or have a right to maintain their bill in this cause. They rely upon a deed of the adult Crawford heirs and a commissioner, appointed by the United States District Court at Indianapolis, Indiana, purporting to convey to them the said tract of fifteen thousand acres, which deed was executed pursuant to a decree of said court under a bill filed by said heirs of Pile against the devisees of A. L. Crawford, on August 26, 1922, after the termination of said cause of Ward R. Case et al., v. Brier Hill Collieries, and the cause of Ermine G. Pile et al., v. Travis Smith et al., a companion case which was consolidated with it. In said decree, in a cause to which these complainants were not parties and of which they had no knowledge until shortly before the filing of their bill in this cause, it was in short undertaken to reform said deed of March 17, 1896, by describing "the Jim Smith tract" as this tract of fifteen thousand acres, which includes the lands herein involved. After the execution and delivery of said deed, these defendants instituted an action of ejectment in the circuit court of Fentress county against these complainants, which action was enjoined by the Chancellor in this case upon confession of judgment by the defendants therein—said confession of judgment being set aside by the Chancellor in his final decree sustaining the bill in this cause. The defendants herein further rely upon adverse possession of S. H. Pile under a deed purporting to bear date of August 10, 1882, executed by James Smith, acknowledged by him on August 27, 1891, and registered on November 8, 1913, in which deed this said tract of fifteen thousand acres is described as conveyed. These defendants also

rely upon other acts of adverse possession which will be later discussed in this opinion.

The bill in this cause was filed to remove said deed of the Crawford devisees and the commissioner as a cloud upon the title of Brier Hill Collieries and trustees under deeds of trust executed by it; and to establish their said title to said tract of about forty-five hundred acres. Said parties deraign their title to said Land Office Warrant No. 630 to F. P. Stone and others issued in the year 1848 by the State of Kentucky; and they also insist that their title has been perfected by open, notorious, peaceable and adverse possession under registered assurance of title for more than seven years prior to the institution of this suit. They insist that whatever title S. H. Pile had to the tract herein involved was conveyed by him to their predecessors in titlé, the devisees of A. L. Crawford by deed of January 24, 1896, in which, as aforesaid, he conveyed all his interest in "the Big Survey" excluding seven tracts, of which the Jim Smith tract was described so vaguely that the attempted exclusion of it was void. The Chancellor held that the parties hereto deraign their claims of title from a common source, to-wit; the aforesaid deeds between S. H. Pile and the devisees of A. L. Crawford. In the opinion of Mr. Justice Green, 145 Tenn., page 18, it was held that said deeds were not acts of partition between tenants in common, as Pile was claiming certain tracts within the "Big Survey" in severalty and adversely and the settlement could not have been made without written instruments. Pile not only claimed these tracts, but also claimed an undivided one-twelfth interest in the remaining portion of "the Big Survey." We do not deem it necessary to go further into the details of the issues based upon these respective claims. The attack made by the appellants upon the record title of the appellees is based upon muniments of title executed subsequent to the said deeds between Pile and the devisees of Crawford.

Upon demand of the defendants a jury was impaneled, evidence was introduced and at the conclusion of all the evidence the complainant moved the court for a judgment and a decree in their favor upon the record in the cause without submission of any question of fact to the jury, upon certain grounds, which among others were set forth in their bill, as follows:

"1. It has filed an unbroken chain of title from the patent issued on Kentucky Land Office Warrant No. 630, with which patent the private ownership of the title to the land in question originated.

"2. It was conclusively settled in the case of Malissa Williams v. Stephen H. Pile et al., that said Pile had no interest in the land in question, and said Pile was estopped by said

proceedings from setting up any further claim therein, and complainants have acquired all the rights of the parties in whose favor said estoppel was created.

"3. Said Stephen H. Pile was conclusively estopped from setting up any further claim to the land in question by representations made by him to A. B. Bradford, agent of the devisees of A. L. Crawford, deceased, when the compromise agreement was made settling all matters in dispute between said Pile and said Crawfords relating to lands lying within the "Big Survey," and complainants have acquired all the rights of said Crawfords in said lands and are in privity with them.

"4. In the consolidated causes of Ermine G. Pile et al., v. Travis Smith et al., and Ward R. Case, Trustee et al., v. Brier Hill Collieries, et al., it was conclusively adjudged between the parties hereto that the description, the 'Jim Smith tract' on the compromise agreement between said S. H. Pile and the said Crawfords, devisees, and the deeds executed pursuant thereto, was void, and whatever interest the said Pile may have had in the land in question was thereby acquired by said Crawfords, and complainants have acquired by subsequent conveyances from said Crawfords, all the rights in and title to said land, and stand in privity with both said Crawfords and said Pile.

"5. The proceedings brought by the Piles against the Crawfords in the United States District Court at Indianapolis and the decree pronounced therein and the deed executed by the (commissioner appointed by said court, are null and void, and vested in said Piles no rights in or title to the land in question, because (1) said court had no jurisdiction to determine the rights of parties to lands in Tennessee, or to divest or vest title to such lands, or to authorize an agent to do so, and (2) complainants had long before acquired all the rights in and title to said lands held by said Crawfords and their said rights and title could not be affected by proceedings to which they were not parties.

"6. Complainants have proven by clear and uncontradicted proof, that if they did not otherwise possess the legal title to the land in question, they have acquired the same by more than seven years open, notorious, continuous, and adverse possession, held under duly recorded color of title.

"7. Defendants are estopped by their allegations in the amendment to the bill filed in the case of Ermine G. Pile et al v. Travis Smith et al., to deny that Linda Ipock and those claiming under her are the owners of the land known as the Linda Ipock tract, and said Linda and those claiming under

her have shown by uncontradicted evidence that they have held more than seven years open, notorious, continuous and adverse possession of said land under a duly recorded color of title before the beginning of this action, and the complainants have acquired said title by a recorded conveyance.''

Thereupon defendants presented to the court the following issues of fact and moved that they be submitted to the jury, to-wit:

''1.   Was the 'Jim Smith tract' of land as described by the deed of Jim Smith and wife to S. H. Pile, purporting to have been signed on the 10th of August, 1882, excluded under the exclusion clause of the deed purporting to have been executed by A. J. Crawford and others to the Crawford Coal and Iron Company on the 26th of September, 1898?

''2.   What body of land, meaning thereby the size thereof, as well as its name, comes within the description of the compromise agreement of July 12, 1895, and in the deed executed by A. J. Crawford and others to S. H. Pile, pursuant to this agreement?

''3.   Does complainant, Brier Hill Collieries, own in fee the tract of land sued for by it in its original bill?

''4.   Has this complainant had the open, notorious, adverse, continuous and exclusive possession of the lands now involved in this cause by registered assurance or assurances of title for more than seven years before the filing of this bill?

''5.   Is complainant, Brier Hill Collieries, an innocent purchaser and owner of the land for which it sues in this cause, and particularly described in Exhibit No. 2 to Schenck's deposition?

''6.   Is the land sought to be recovered by complainants in this case covered by, and included within the descriptive parts of the deed of A. J. Crawford and others to the Crawford Coal and Iron Company, dated September 26, 1898?

''7.   Was there any fraud practiced in the procurement of the Indianapolis Federal court degree?

''8.   Have the defendants, the Piles, and their vendees and their ancestors and vender, S. H. Pile, for more than seven years before this suit was brought, been in the open, notorious, adverse, continuous and exclusive possession of the lands sued for by complainants, claiming the same under a paper purporting to convey the fee, and claiming to the extent of the boundaries of said paper?''

After argument of counsel the court sustained the first, fourth, fifth and sixth grounds stated in the motion made by complainants, and, therefore, declined to submit any question

of fact to the jury, and entered a decree in accordance with the prayer of the bill.

The court held that complainants had an unbroken chain of title from the patent issued on Kentucky Land Office Warrant No. 630, that the description, "Jim Smith tract," in the compromise agreement between S. H. Pile and the Crawford heirs had been held invalid in the case of Ward R. Case et al. v. Brier Hill Colleries et al., and that complainants had acquired by conveyance executed by said Crawford subsequent thereto, all their rights in and title to the land involved herein. It was further held by the court that the Federal court proceeding at Indianapolis was null and void, and vested in defendants no right or title to the land in dispute; and that complainants had proved that they had held open, notorious, continuous and adverse possession of this land for more than seven years prior to the beginning of this action, and possession was held under a duly recorded title. Upon the foregoing findings the court predicated its decree adjudging that the complainants are the true and lawful owners in fee of the land described in the bill as amended. The claims of the defendants, including the Federal court decree, were cancelled as clouds upon the title of complainants, the court holding that said decree is a fraud in law, but that there was no fraud in fact in its procurement. The judgment by confession in the circuit court case was enjoined in so far only as it affected the land decreed to complainants in this cause.

The defendants excepted to the action of the court, presented their motion for a new trial, which was overruled by the court, and in due season perfected their appeal. In the course of this opinion the questions presented by the assignments of error will be treated and disposed of.

The jurisdiction of chancery over this case is based upon the prayer for relief by removal of a cloud from the title to the land. It is necessary for the complainant to show itself to be the true owner of the legal title before it can be justly awarded that which it seeks. Jones v. Nixon, 102 Tenn., 95, 50 S. W., 740; Wilcox v. Blackwell, 99 Tenn., 352, 41 S. W., 1061; Estill v. Decherd, 4 Baxt., 497; Ross v. Young, 5 Sneed, 627; Hoyal v. Bryson, 6 Heisk., 139; Coal Creek Mining Co. v. Ross, 12 Lea., 1.

Without question the court of chancery, having jurisdiction to remove cloud from title, has also jurisdiction to determine all other questions of title properly raised. If the complainant, Brier Hill Collieries, has a valid legal title, certainly the proceedings in the United States court in Indiana and the deed executed pursuant thereto would constitute a cloud upon its title. In other words, if

the decree and deed are fraudulent or invalid as to said complainant, the deed is nevertheless a cloud upon the title of complainant. Johnson v. Cooper, 2 Yerg., 524; Jones v. Perry, 10 Yerg., 59; Maloney v. Johnson, 2 Shan. Cas., 446; Carter v. Taylor, 3 Head., 30.

We will, therefore, first consider the question of the validity of the complainant's title of record. We agree with the Chancellor that it is not necessary to go beyond the deeds of the Crawford heirs to S. H. Pile and S. H. Pile to the Crawford heirs, executed in 1896. The Pile heirs claim to hold title under the deed from the Crawford heirs and the Brier Hill Collieries also deraigns its title to the Crawford heirs. On September 26, 1898, the heirs or devisees of A. L. Crawford executed and delivered to the Crawford Coal & Iron Company, a deed in which it is claimed that this property was conveyed. On September 21, 1904, the Crawford Coal & Iron Company executed and delivered to the Brier Hill Collieries a deed in which it is claimed that this tract was conveyed. The validity of each of these deeds is under attack, the appellants insisting that the deed to the Crawford Coal & Iron Company was void for insufficiency of description of this tract and that the deed to the Brier Hill Collieries was void because made for an unlawful consideration. Both of these deeds were duly registered.

In his deed to the Crawford heirs of January 24, 1896, S. H. Pile transferred all of his right, title and interest in and to the entire "Big Survey" of 123,989 acres, excluding certain tracts. The only exclusion attempted to be applied to the land herein involved was that described as "the Jim Smith tract," which, as aforesaid, was held to be void.

In Case, Trustee v. Brier Hill Collieries et al., the Supreme Court held that the Pile heirs could not recover from the complainants herein this tract on the ground that it was "the Jim Smith tract." Of course, it did not hold that the complainants, who were the defendants to that suit, were in point of fact the owners of said land. But inasmuch as Pile had conveyed all his interest in "the Big Survey" with a void attempt at exclusion of "the Jim Smith tract," it must be concluded that the effect of his deed to the Crawford heirs was to vest in them all of his title to the lands herein involved.

In Stockley v. Cissna, 119 Tenn., 135, in which the issue of conclusiveness of a former adjudication of the title to land in an action of ejectment upon the same parties in a subsequent action of forcible entry and detainer was involved, it was held that the judgment in the ejectment suit was conclusive as to what issues, rights or titles were therein involved and adjudicated. The Supreme Court applied the rule set forth in 24 Amer. & Eng. Ency., of Law. (2nd Ed.), p. 780, as follows:

"It is not the identity of the thing sued for or of the cause of action which determined the conclusiveness of a former judgment upon a subsequent action, but merely the identity of the issue involved in the two suits. If an issue presented in a subsequent suit between the same parties or their privies is shown to have been determined in a former one the cause is res adjudicata, although the actions are based on different grounds, or tried on different theories, or are instituted for different purposes and seek different relief. The test of identity is found in the inquiry whether the same evidence will support both actions." See also, State v. West, 139 Tenn., 522.

Under Shannon's Annotated Code, sec. 5000, a judgment in ejectment is conclusive upon the party against whom it is recovered, excepting parties under disability at the time of the recovery, and all persons claiming under him by title accruing after the commencement of the action. The effect of the decision of the Supreme Court in Case, Trustee v. Brier Hill Collieries, supra, was that S. H. Pile acquired no title to land purported to be described as "the Jim Smith tract," under his deed of March 17, 1896. That decision is final and conclusive so far as the same issue is presented here, as it is among the same parties and depends upon the same evidence. It matters not, as to this question, that the position of the parties is reversed, for the former adjudication must be taken as having settled a particular right, question or fact which could be disputed in a subsequent suit between the same parties or their privies. Harris v. Mason, 120 Tenn., 677; Hilton v. Anderson, 149 Tenn., 622. In Pile v. Pile, 134 Tenn., 377, it was said:

"When the second suit is upon the same cause of action and between the same parties as the first, the judgment in the former is conclusive in the latter as to every question which was or might have been presented or determined in the former. When, however, the second suit is upon a different cause of action, but between the same parties as the first, the judgment in the former action operates as an estoppel effective in the latter as to every point and question which was actually litigated and determined in the first action, but is not conclusive in relation to other matters which might have been, but were not, litigated or decided. Southern Pacific R. Co. v. United States, 168 U .S., 1, 18 Sup. Ct., 18, 42 L. Ed. 355."

The appellants, however, have sought in the United States district court of Indiana to reform the deed of S. H. Pile to the Crawford heirs by causing it to describe a tract of about fifteen thousand acres, including the lands herein involved, as "the Jim Smith tract," which they say was intended to be conveyed in said deed. The appellees were not parties to said proceeding and it is conceded

by the appellants that the appellees are not bound by said proceedings. The heirs of Crawford take the position that if said proceeding is void they insist on having the title which they once attempted to convey away. The situation was not one in which only the original parties to the deed were involved. The complainants, in their bill, insist that they are innocent purchasers, having in good faith purchased the land for a valuable consideration without notice of any claim of S. H. Pile, or his heirs, to any interest in the land in litigation. Pile had no title of record to this land in 1904, when the Brier Hill Collieries took its deed from the Crawford Coal & Iron Company—the deed describing the "Jim Smith tract" being void and conveying no information that the tract herein involved was meant. Therefore, just as if Pile had held under an unrecorded conveyance, the burden of proof is upon his privies in estate to show notice of such claim to the Brier Hill Collieries. Wilkins v. McCorkle, 112 Tenn., 706, citing 24 Am. & Eng. Ency. of Law (2nd Ed.), p. 137 and cases supporting the text therein given. This burden the defendants have not assumed to carry, having shown no such notice, and therefore, the Brier Hill Collieries must be treated as an innocent purchaser. The rule is that no reformation of an instrument can be had against a bonafide purchaser for value and without notice. Such purchaser is not subject to the equity of a party injured by a mistake and there can be no reformation against him. Pomeroy on Equity, sec. 766; Story on Equity, sec. 206; Garrison v. Corwell, 67 Tex., 626, 4 S. W., 69; Ligon v. Rogers, 12 Ga., 281; Whitman v. Weston, 30 Me., 285; Lowe v. Allen, 68 Ga., 225; Garrard v. Frankel, 30 Beav., 445; Davidson v. Davidson, 42 Ark., 362; Boone v. Graham, 215 Ill., 511, 74 N. E., 559; Cross v. Berr, 81 Me., 525, 17 Atl., 710; Goode v. Riley, 153 Mass., 585; 28 N. E., 228.

Furthermore, the deed of S. H. Pile of 1896 being void as to "the Jim Smith tract," the Brier Hill Collieries, if its deed was valid, took title to the land herein involved because, as aforesaid, that title was conveyed by Pile to the Crawfords, then by the Crawfords to the Crawford Coal & Iron Company and by that company to the Brier Hill Collieries. This being true, the Crawford heirs no longer had any title to this property and therefore, the attempt of the adult Crawford heirs and the court, purporting to act for the minor heirs, to vest in the heirs of Pile any title, was invalid and ineffective.

The decree in that case was based upon the assumption or representation that the tract described in the bill and deed was "the Jim Smith tract." It requires no citation of authorities to show that this is not binding upon the complainants. Under this view, which we think is sound, the decree and deed amounted to no more than an attempted deed to the Pile heirs purporting to convey something

that the parties did not own. The Crawfords had no title or interest in the property. They were strangers to any title to it. Whatever might be their wishes they could avail nothing. This is not an attack in a Tennessee court upon a decree of the court in Indiana. That decree may stand forever as binding the parties to that proceeding. This is simply a proceeding to have that proceeding declared to be invalid as affecting the title of the complainants to the property herein involved; to remove said deed of the Crawford heirs and the commissioner as a cloud upon the title of claimants, who are not bound by that proceeding. The question therefore, recurs to the original question which has been determined by the Supreme Court, to-wit, whether or not the deed of S. H. Pile to the Crawford heirs passed title to "the Jim Smith tract." This question has been determined in the negative and for the reasons heretofore given, this determination must be taken as final. This we hold independently of the question of the power of the court in another State, whether State or Federal court, to divest and vest title to lands in this State. Furthermore, the proceedings in the United States court in Indiana could not be effective as to the complainants because they are not in accord with the principles of equity upon which relief on the ground of mutual mistake can be afforded. The rights of strangers to the original transaction have intervened. For all of these reasons we hold that the heirs of Pile have not acquired a new title by the proceedings in the United States court in Indiana, and that this question is not controlled by the rule that a judgment adverse to a complainant in one action to recover land does not preclude another action for the same land against the same parties based upon another title subsequently acquired and not involved in the first suit. Gore v. Gore, 101 Tenn., 620; Bird v. Cross, 123 Tenn., 419.

In Union Pacific Railway Company v. Reed, 80 Fed., 234, it was held by the United States Circuit Court of Appeals that a deed rectifying a former deed, which did not pass title because of its defective execution, cannot affect a title acquired under a deed to a third person between the date of the original deed and the date of the ratification.

In that case there was no question as to the identity of the land involved. A fortiori, such deed of ratification would be ineffective where the description in the first deed was void.

It is insisted that the Chancellor erred in overruling exceptions to the introduction of the deed of Crawford heirs to the Crawford Coal & Iron Company, first, because it is void for uncertainty and insufficiency of description and for confusion in description; second, because the deed recites that the tract of land thereby intended to be conveyed is not the land sued for by Brier Hill Col-

lieries, because the land sued for lies wholly in Fentress county, whereas, the tract of land intended to be conveyed by said deed is affirmatively shown in the deed to be located in both Scott and Fentress counties. The descriptive parts of said deed relating to the tract herein involved are as follows:

"First. A tract of land granted by State of Kentucky to Francis P. Stone et al., made in consideration of Land Office Warrant No. 630 containing originally 123,989 acres, more or less, and beginning at a sugar tree, etc. (then follows description of said 'Big Survey') . . . excepting, however, several tracts of land held by various parties under older and better claims, and containing after such exceptions five thousand acres more or less . . . (here follows description of eight other tracts).

"All of the above nine described tracts of land lie in the county of Fentress and State of Tennessee, except the land intended to be conveyed in the first named tract, which lies in both Fentress and Scott counties, State of Tennessee."

There is no question that the "Big Survey" was properly described in said deed. Without the exceptions or exclusions, the deed purported to pass title to the entire tract of 123,989 acres. The tracts intended to be excluded are not specifically described in the deed. For this reason, it is insisted that it is impossible to take this deed, without extrinsic evidence, and to apply this description to any one tract of five thousand acres. The rule is that if the description is on its face so indefinite as to be applicable to any tract of land, then parol evidence is not admissible at all, because its effect is to supply by parol a material part of the agreement which the statute of frauds requires to be in writing. Dobson v. Litton, 45 Tenn., 616; Ward R. Case, Trustee et al. v. Brier Hill Collieries et al., 145 Tenn., 1.

But the rule is well settled that a deed of this character conveys the title to all lands within the boundary described that is held by the grantor; and that the burden is on the one attacking the deed to prove that there is a superior outstanding title to the particular tract in dispute. Bowman v. Bowman, 3 Head., 47; Fowler v. Nixon, 7 Heisk., 719; Bleidorn v. Pilot Mountain C. & M. Co., 89 Tenn., 204; Iron & Coal Co. v. Schwoon, 124 Tenn., 176; Brier Hill Collieries v. Gernt, 131 Tenn., 543; Kobbe v. Harriman Land Co., 139 Tenn., 251; Dunlap v. Sawvell, 142 Tenn., 696; Wright v. Hurst, 122 Tenn., 656.

This is a rule of property in Tennessee. These cases hold clearly that a deed of this character must be regarded as investing the grantee with a legal title to all of the land included in its boundaries not shown to be held by a superior title; and that it devolves upon

a defendant, who disputes the title of a plaintiff who claims under a grant excluding older titles without definitely describing such excluded tracts, to show the existence of such older title affirmatively; otherwise, such a plaintiff may, under such grant, recover all lands within the calls of his grant. A careful reading of all the cases just cited will show that this principle is thoroughly imbedded in our law and has been repeatedly applied.

In Iron & Coal Company v. Schwoon, 124 Tenn., 176, the court said:

"The rule laid down in Bowman v. Bowman, and other cases cited in connection therewith, has become a rule of property in this State, and the consequences of indulging the technical distinction made in complainant's brief just referred in respect of the particular part of a deed in which the excluding clause must appear might be disastrous. The cases cited, Bowman v. Bowman, and others therewith, refer to exclusion clauses generally, and the doctrine upon that subject is firmly established in this State."

The defendants offered no evidence as to the location of the excluded tracts. While the burden was not on complainants to show that the land herein involved was not covered by older and better title, nevertheless, they did offer some evidence that these lands were not included in such titles; and no contradictory evidence was offered by the defendants. The evidence offered by the complainants tended to show that the land in dispute is not covered by any older or better titles outstanding at the time of the execution of said deed. The defendants do not claim in their pleadings that the land in dispute is covered by any older or better title and on the other hand, they aver that when the compromise agreement of 1895 was made between S. H. Pile and Crawford, Pile was the owner of an undivided one-twelfth interest and the Crawfords were the owners of an eleven-twelfths undivided interest in said lands.

The land in dispute, as conceded, lies inside of the outside boundaries given in the description in the deed; and we must conclude that these lands were not covered by older and better titles. It is undisputed that the large tract, "the Big Survey," lies in both Fentress and Scott counties. It is now insisted that because of the recital in the habendum clause the deed cannot be applied to any tract unless it be divided by the Fentress and Scott counties' line. It is the duty of the court to uphold the deed if by any reasonable construction it is possible to ascertain from the description, the property it was intended by it to convey, and a liberal construction should be given to afford a basis for validity. Gernt v. Floyd, 131 Tenn., 122; White v. Hembree, 1 Tenn., 529; Jones on Real Property, Vol. 1, secs. 323; Funa v. Manning, 11 Humph., 311; Graham v. Dudley, Cooke, 353.

Under this rule we must treat the reference to Scott county as incidental, or as meaning that the entire "Big Survey" lies in both Fentress and Scott counties. In this view, we find no difficulty as to the county in which the land lies, and to submit such question to the jury would have been immaterial and improper. It would have had no determinative quality.

It is insisted that the deed of Crawford Coal & Iron Company to Brier Hill Collieries is void because the consideration therefor was shares of capital stock of the Brier Hill Collieries. The deed recites that the consideration was $999,000 of the capital stock of the Brier Hill Collieries and the assumption by the latter of the payment of all the valid and legal debts of the Crawford Coal & Iron Company. It is insisted that this deed is an ultra vires contract and wholly void for all purposes, under the rule laid down in Marble Company v. Harvey, 92 Tenn., 115, that a corporation could not become the owner of shares of stock in any other corporation and that the unauthorized purchase of one corporation of the shares of another corporation is void. This was, without doubt, the law of Tennessee at the date of said deed. But, as was properly held by the Chancellor, this is not a question which can be raised by the defendants. In Read v. Street Railway Co., 110 Tenn., 333, it was held that where a corporation transfers its property to another corporation for the consideration of capital stock, and no objection is made by a dissenting stockholder, nor by an existing creditor nor, by a subsequent creditor, no one else can object to the disposition of the corporate property unless it be the State in some proper proceeding. It has been further held that where there has been an ultra vires conveyance of real property or transfer of personal property fully executed, and the property delivered, the corporation cannot maintain a suit to avoid the transaction and recover the property. Memphis Lumber Co. v. Security Bank & Trust Co., 143 Tenn., 142; Tenn. Ice Co. v. Raine, 107 Tenn., 151; Barrow v. Turnpike Co., 9 Humph., 304. These authorities are conclusive of this question. Neither the State, nor any stockholder, nor creditor is making any objection to the conveyance in question.

It is insisted that under the principle announced in Brown v. Maury, 85 Tenn., 358, the deed of the Crawford heirs to Crawford Coal & Iron Co., if valid and sufficient to convey five thousand acres of land lying within the boundary of the "Big Survey," operated to convey only a fractional or undivided interest which five thousand acres would bear in proportion to the entire tract or the entire quantity owned by the Crawford heirs at that time. We cannot concur in this proposition because the deed did not purport, as did the mortgage in Brown v. Maury, to convey any aliquot part of a tract of land. In Brown v. Maury no exclusion was men-

tioned. The instrument therein involved was a mortgage of an uncertain two hundred acres of a nine hundred-acre-tract of land, and it was held that the mortgagee acquired an interest of an undivided two-ninths of the entire tract. The difference between the conveyance of a part of a large tract left after exclusions are made and the conveyance of a certain proportion designated by acres of a tract, also designated by acres' is very substantial and to these respective descriptions different rules must apply.

We are, therefore, of the opinion that the complainant, Brier Hill Collieries, has established a valid and legal title of record to the lands herein involved. But there are other questions yet to be determined.

The question now arises whether or not complainants have proven by clear and uncontradicted proof that if they did not otherwise possess the legal title to the land in litigation they have acquired the same by more than seven years open notorious, continuous and adverse possession, held under duly recorded color of title. With reference to the acts of possession, as claimed by the respective parties, there is no substantial conflict in the evidence. Each relies upon acts of possession, neither questioning the other in fact, but each claiming that the title had been tolled by the possession shown.

Having held that the deed of the Crawfords to the Crawford Coal & Iron Company, registered September 1, 1902, was not void for vagueness of description, we must hold that it constituted on that date a registered assurance of title, under Shannon's Code, sec. 4456. The complainants also claim title by adverse possession for more than seven years under certain other deeds purporting to convey in fee the land in litigation—being deeds of Union Land Coal & Coke Company to Crawford Coal & Iron Company, registered November 23, 1899; deed of Melissa Williams and Harvey Williams to Crawford Coal & Iron Company, registered April 16, 1901. The deed of Crawford Coal & Iron Company to Brier Hill Collieries was registered October 3, 1904. The Brier Hill Collieries and its predecessor in title, the Crawford Coal & Iron Company, have had a registered assurance of title to the land in litigation ever since November 23, 1899. Without going into unnecessary detail, we find from undisputed evidence that beginning in January, 1896, the Crawfords, through their agent, A. B. Bradford, established and maintained by a tenant named Ipock a possession on this land near the county road from Jamestown to Huntsville, it being known as the Sharp place. A written lease to Ipock of the entire tract herein involved, was executed in January, 1896. Ipock cleared seven or eight acres, cultivated the same each year, and erected a log residence thereon. In this way he lived for more than seven years as tenant of the Crawfords until his death, and after his death, his

widow, Linda Ipock, continued to live there as tenant of the Craw-fords and their successors in title. In 1903, Mr. J. T. Wheeler, as agent for the Crawford Coal & Iron Company, renewed the lease to Samuel and Linda Ipock by written instrument. This lease was extended by Samuel Ipock before he died in 1905 and again by his widow in 1906. After the Brier Hill Collieries purchased the property in 1904, Samuel and Linda Ipock continued to represent that they were holding the property for the Brier Hill Collieries. Shortly after the death of Samuel Ipock, his daughter, Laura, mar-ried Jim Sharp and they lived there with the widow, Linda Ipock, under an agreement that they were holding as tenants of Brier Hill Collieries. In 1909 Mr. Wheeler made another agreement with Sharp to continue holding the possession as such tenant. Sharp moved away for a while but by agreement returned, moving into another house on Linda Ipock's place, but he soon moved into the original Sam Ipock house. A written lease of the entire tract was executed between him and Brier Hill Collieries on May 3, 1911. Under this lease he held as such tenant until another lease was executed on April 10, 1915, which was extended on December 20, 1915, again on January 31, 1917, and a third time on February 7, 1919. Sharp remained on the place under these agreements as ten-ant of the Brier Hill Collieries until about the year 1920; he im-proved the house, repaired the fences, made some additional clear-ings and stated on different occasions that he was holding for the Brier Hill Collieries. Earl Wheeler was also living on the place when Sharp moved away. He took actual charge of the possession and has held it continuously for the Brier Hill Collieries. The field around the Sharp place contains between twenty and twenty-five acres. There can be no question that it has always been a substan-tial possession, in fact, a small farm, giving unmistakable notice of holding adversely to all who would question the title of the land-lord. These places have been occupied and the land cultivated continuously during all these years. It is true that Mitchell Ipock moved to the Sharp place in 1910 and cultivated it during that year. Jim Sharp moved away in the spring of that year and re-turned the following year; there is a dispute as to whether or not Sharp during the year 1910 cultivated a part of this land. He and his wife, Laura, testified that they did, while Mitchell Ipock denies it. But, as aforesaid, it is not questioned that Jim Sharp and his wife moved back in the spring of 1911 and remained in possession under an agreement with Mr. Wheeler, as agent and at-torney for the Brier Hill Collieries, from that time until he moved away about the year, 1920, and that Earl Wheeler has been holding it as tenant of Brier Hill Collieries ever since that time. Mitchell Ipock testified that he went upon the place in 1910 under an agree-ment to hold as tenant for the heirs of S. H. Pile, but even if his

cultivation of the Samuel Ipock possession in 1910 under an agreement with the Piles broke the possession of the Brier Hill Collieries, nevertheless an adverse possession of that company and its predecessors in title had continued for more than seven years prior to 1910. It is not claimed by Mitchell Ipock that he had any understanding with the Piles to hold possession for them before the year 1910. Furthermore, if no possession had been held by the Brier Hill Collieries prior to 1910, the possession by Sharp, who returned in the spring of 1911, and then by his successor, Earl Wheeler, had continued for more than seven years before the institution of this suit. This Sharp possession began prior to the date of registration of Pile's color of title, which was in 1913, as will now be set forth.

The defendants rely upon possession by James Smith, Enos Doss, Giles Watson, Rutha Doss and Robb Doss. After January 24, 1896, the date of the deed of S. H. Pile to the Crawfords, neither Pile nor his heirs had any registered assurance of title to this land until November 8, 1913. On that date was registered a deed of James Smith to S. H. Pile, purporting to convey in fee simple a tract of fifteen thousand acres including the land herein involved. There is no evidence that James Smith had any title to this land. Of course, the deed constituted color of title. This deed was dated August 10, 1882, but was not acknowledged or delivered until August 7, 1891. Smith had a small possession outside of the boundaries herein involved, but not under color of title. He testified that he executed this deed to S. H. Pile under an agreement that he would receive one-third of the proceeds of any sale of said tract of fifteen thousand acres. For a few years prior to 1891, Smith had lived on a small tract of one hundred forty-seven acres near to the said small possession. This tract was conveyed to him by Late Blevins. The Smith, Doss and Watson possessions were all outside of the boundaries of the land herein involved. None of them continued for a period of twenty years prior to November 8, 1913, the date of registration of the deed of Smith to Pile. Furthermore, if Pile had acquired any title by possession prior to his conveyance to the Crawfords in January, 1896, that conveyance operated to pass said title to the Crawfords. The possessions by the Piles or their tenants after November 8, 1913 were concurrent with the possessions by the Brier Hill Collieries or its tenants. The rule is that where the possession of property is mixed or concurrent the legal seizin or possession is in the person who has the estate. In other words, where two parties jointly occupy land the one having title and the other not, the occupancy inures to the benefit of the one holding the legal title. There cannot be, in legal contemplation a possession, either actual or constructive, of the same identical tract of land in two adverse claimants at the same time. This is

the doctrine of mixed or neutralized, possessions. Stewart v. Harris, 9 Humph., 714; Knight v. Jordan, 6 Humph., 101; Moore v. Walker, 3 Lea., 656; Waddle v. Stuart, 4 Sneed, 535; Ramsey v. Quillan, 5 Lea., 184; McCammon v. Pettitt, 3 Sneed, 242; Welcker v. Staples, 88 Tenn., 49.

Under this rule the possessions of the Pile heirs after November 8, 1913, could not avail anything, for the Brier Hill Collieries had a valid title of record to the land in litigation. Any mere possessory rights of the Pile heirs did not apply to this land and whatever of such rights they acquired had been abandoned before the institution of this suit. They would in any event apply only to the boundaries actually enclosed. The disputed possession of Mitchell Ipock in 1910 would only operate at most to break the possession of the complainants and, as aforesaid, this possession was renewed and maintained for a full period of more than seven years thereafter.

We are, therefore, of the opinion that the defendants have not acquired title to this land by adverse possession. It is manifest that the evidence does not show any material conflict and that the Chancellor was correct in holding that there was no determinative issue to be submitted to the jury.

It is insisted that the Chancellor erred in overruling exceptions of the defendants to three answers filed by S. H. Pile in a case styled Malissa Williams v. S. H. Pile et al. These answers were introduced to support a claim of estoppel because in them Pile purported to set forth what land he claimed within the boundary of the "Big Survey" and the land here in litigation was not specified. But the Chancellor did not base his decree upon such estoppel, evidently upon the authority of Pile v. Pile, supra, in which these very answers were held not to constitute an estoppel upon Pile in a suit between him and other parties. The assignment, therefore, is immaterial.

It is further insisted that the court erred in permitting the complainants to offer as evidence various grants from the State of North Carolina and Tennessee and various deeds, conveying lands within the "Big Survey," for the purpose of showing that the land herein involved was not covered by older and better title. These documents were also read for the purpose of showing that S. H. Pile did not convey a one-twelfth interest in the entire "Big Survey" by his deed of March 17, 1896, but in fact conveyed only a small acreage or undivided interest in a small acreage instead of conveying what the deed recited that it did convey. It is insisted that the complainants will not be allowed to impair or cut down the title which was in the common source; but otherwise, even if they could impair or cut down the title in the common source, they would have to do so by showing that the real title to the land was outstanding in another. We are unable to see the materiality of

this assignment. It was, in our opinion, not improper for these instruments to be introduced and read in answer to the contention of injustice to defendants in denying to them a recovery when their ancestor had parted with so large and valuable an interest in land and through inadvertence accepted a deed which was void as to this land.

It is insisted that the Chancellor erred in permitting complainants to offer and read in evidence the depositions of witnesses, Dorothy L. Mace, Emma L. Pile and Samuel D. Royse, in order to prove by said witnesses what was said and done by the defendants, the Piles and Crawfords, leading up to the final decree in the United States district court at Indianapolis. This assignment is not well taken for one of the issues before the Chancellor was as to whether or not the said proceeding was fraudulent.

It is insisted that the Chancellor erred in excluding testimony of certain witnesses as to declarations made by S. H. Pile that the Doss family and others were holding their possessions for him. These were treated as self serving declarations. In view of our previous holding as to the possession relied upon by defendants, we might consider all of this testimony and yet it would avail nothing; consequently we must treat the assignment of error as immaterial.

It is insisted that the Chancellor erred in admitting testimony of E. E. Barthell, Jesse Patton, John Toomey and A. B. Bradford to the effect that they heard S. H. Pile say that the "Jim Smith tract" was a small tract of about one hundred acres in Scott county or elsewhere outside of the boundaries of the land in litigation. As these statements were in the nature of admissions, or declarations against interest, on the part of S. H. Pile, we are of the opinion that they were admissible. Overton v. Hardin, 6 Cold., 335.

It is insisted that the issues should not have been withdrawn from the jury because of the testimony of two surveyors, Smith and Schlicker, and defendant, O. P. Pile, that the description in the deed from the Crawfords to the Crawford Coal & Iron Company cannot be applied to the land involved in this cause. In view of the rule hereinbefore discussed that the burden was upon the defendants to show the exclusions, and that this burden was not carried, and that said deed on its face passed title to the entire "Big Survey," including the land in question, we are of the opinion that this contention is not well taken. A mere general statement of opinion that the description cannot be applied to the land involved would not justify a submission of this question to the jury for this would amount to abrogation of the aforesaid rule as to the burden of proof to show the exclusions.

The record in this cause is very voluminous and the assignments of error have presented very many questions. Not all of them have

been dealt with in detail. But in our opinion the determinative questions have been now presented and disposed of. The action of the Chancellor in withdrawing the issues from the jury did not amount to any denial of the right of defendants to a trial by jury, because there were no determinative issues of fact as to which there was any real conflict in the evidence. At last, the controversy presented questions of law. In our opinion these have been correctly decided. The decree of the Chancellor is in all things affirmed. The costs of this appeal will be adjudged against appellants, the defendants below, and the sureties on their appeal bond.

Faw, P. J., and Crownover, J., concur.