IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
NOVEMBER 20, 2000 Session

## CHUCK WALLACE, ET AL. v. BOB CHASE, ET AL.

**Direct Appeal from the Chancery Court for Carroll County**
**No. 97-CV-104; The Honorable Ron E. Harmon, Chancellor**

_____

**No. W1999-01987-COA-R3-CV - Filed April 17, 2001**

_____

This appeal arises from a boundary line dispute between the Appellants and the Appellees. The Appellees filed a complaint with the Chancery Court of Carroll County against the Appellants. The Appellants filed a counter-complaint against the Appellees. Following a trial, the trial court reformed the deeds of the parties. The trial court moved the disputed corner of the properties twelve and one half feet due south of a PK nail in the roadway. The trial court also granted a permanent easement for an existing driveway to the Appellants.

The Appellants appeal from the reformation of the parties' deeds by the Chancery Court of Carroll County. For the reasons stated herein, we affirm in part and reverse in part the trial court's decision.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Reversed in Part**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., and DAVID R. FARMER J., joined.

L. L. Harrell, Jr., Trenton, TN, for Appellants

Robert T. Keeton, III, Huntingdon, TN, for Appellees

**OPINION**

**I. Facts and Procedural History**

On May 7, 1997, the Appellees, Chuck and Hilda Wallace ("the Wallaces"), filed a complaint against the Appellants, Bob and Addie Chase ("the Chases"), with the Chancery Court of Carroll County. The Wallaces claimed that the Chases had built a wooden fence which ran the entire length of the Wallaces' southern boundary of their property. The Wallaces claimed that the fence encroached 24.9 feet onto the southwest boundary of their property and tapered to a pin on the

southeast boundary of their property. On May 20, 1997, the Chases filed an answer and counter-complaint. The Chases denied any encroachment onto the Wallaces' property and alleged that they were entitled to the peaceful use of their driveway by ownership, easement by necessity, or easement by prescription. On August 12, 1997, the Wallaces filed an answer to the counter-complaint. On March 30, 1999, the Wallaces filed an amended complaint. The Chases filed an answer to the amended complaint on April 26, 1999.

The trial was held on August 12, 1999. Following the close of the parties' proof, the trial court stated that there was a perfect survey to each property, that the calls matched, and that it was possible to put the survey on the ground. The trial court found, however, that the survey did not accurately reflect what the parties believed to be the northernmost boundary between the two properties. By order entered November 22, 1999, the trial court reformed the deeds of the parties so as to move the disputed corner twelve and one half feet due south of the PK nail in the roadway. The trial court further granted to the Chases a permanent easement for the existing driveway that was to run perpetually with the land in the location where the driveway was located. This appeal followed.

On April 15, 1988, Billy and Dorothy Portis ("the Portises") conveyed two tracts of property, 6.84 acres and 19.62 acres, by warranty deed to the Wallaces. The Wallaces retained the 6.84 acres but conveyed the 19.62 acres by warranty deed to Lee and Donna Butler ("the Butlers"). Mr. Wallace, Dr. Butler, and surveyor, Aaron Edwards ("Mr. Edwards"), met at the property. Mr. Wallace and Dr. Butler decided that the boundary line between the 6.84 acres and the 19.62 acres was a fence row on the south side of a gravel roadbed. Mr. Edwards placed flags at the boundary line between the properties and the corners of the properties. Mr. Wallace states that he drove a metal stake into the ground beside Mr. Edwards' pin at the southwest corner of the 6.84 acres/northwest corner of the 19.62 acres. Mr. Edwards surveyed and wrote the descriptions for the 6.84 acres and the 19.62 acres. The survey depicted the southwest corner of the 6.84 acres/northwest corner of the 19.62 acres as twenty-five feet north of the boundary line as determined by Mr. Wallace and Dr. Butler. Mr. Wallace testified that he was under the impression that the survey of the 6.84 acres and the 19.62 acres conformed to the boundary line established by Dr. Butler and himself. Mr. Wallace claims that, prior to this lawsuit, all subsequent purchasers of the 19.62 acres acknowledged the boundary line as determined by Dr. Butler and himself.

On November 10, 1995, Charles and Judith Logan ("the Logans") conveyed the 19.62 acres by warranty deed to the Chases.[1] After the Chases' purchase, Mr. Wallace erected barriers that partially blocked the driveway he had developed for the 19.62 acres. The Chases built a wooden fence which ran the entire length of the Wallaces' southern boundary of the 6.84 acres. Mr. Chase claims that he hand set each fence post six inches away from the boundary line as depicted on the survey. The Wallaces contend that the fence encroached 24.9 feet onto the southwest boundary of their property.

---

[1]The 19.62 acres changed hands four times between the Wallaces' sale to the Butlers and the Chases' eventual purchase.

The monument in the southwest corner of the 19.62 acres is not in dispute. Likewise, the monument in the southeast corner of the 6.84 acres/northeast corner of the 19.62 acres is not in dispute. The property in dispute is twenty-five feet beginning at the southwest corner of the 6.84 acres/northwest corner of the 19.62 acres and narrowing to a point at the monument in the southeast corner of the 6.84 acres/northeast corner of the 19.62 acres. The description of the 19.62 acres in the warranty deed from the Portises to the Wallaces is identical to the description of the 19.62 acres in the warranty deed from the Logans to the Chases. The description is as follows:

> Beginning at an iron pin at the northeast corner of the McMillin property[2] in the south right-of-way of the Rosser-Wyatt Road; thence N 0 degrees 13' 10" E, 25.0 feet to the northwest corner of the herein described tract; thence N 89 degrees 18' 16" E along the south line of a 3.65 acre tract and along a south line of the Walker property, 1291.40 feet; thence S 44 degrees 27' 53" W along a new divisional line of the Portis property passing an iron pin in the south right-of-way of a county gravel road at 13.78 feet and continuing for a total distance of 1032.91 feet, iron pin as corner; thence S 42 degrees 26' 35" W continuing along said new divisional line, 849.99 feet to an iron pin in a fence line and in the east line of the McMillin property; thence N 0 degree 13' 10" E along a fence and the east line of the McMillin property, 1323.01 feet to the point of beginning and containing 19.62 acres. Bearings refer to record bearings. As surveyed by Aaron F. Edwards, Tennessee Registered Land Surveyor, License No. 366 on April 11, 1988.

The properties have been surveyed on six separate occasions. Each surveyor has confirmed the pin located at the southwest corner of the 19.62 acres. The surveys have produced conflicting results concerning the location of the iron pin at the northeast corner of the McMillin property ("the McMillin corner"). The conflict surrounds the distance of the common line between the McMillin property and the 19.62 acres, which connects the southwest corner of the 19.62 acres to the McMillin corner. On December 18, 1984, Mr. Edwards surveyed the McMillin property. Mr. Edwards found the line's distance to be 1300 feet. On April 11, 1988, Mr. Edwards surveyed the 6.84 acres and the 19.62 acres prior to the sale to the Wallaces. Mr. Edwards found the distance to be 1323.01 feet plus an additional twenty-five feet. In 1992, Mr. Edwards resurveyed the 6.84 acres and found the distance to be the same as the 1988 survey. On August 29, 1992, Samuel Carrell ("Mr. Carrell") resurveyed the McMillin property for Danny Wallace. Mr. Carrell found the distance to be 1300 feet. In 1996, David Hall ("Mr. Hall") surveyed the 19.62 acres for the Chases. Mr. Hall found the distance to be 1323.01 feet plus an additional twenty-five feet. Eddie Coleman ("Mr. Coleman") surveyed the 6.84 acres and the 19.62 acres for the Wallaces as a result of this lawsuit. Mr. Coleman

---

[2]The McMillin property adjoins the Chases' property to the west. The McMillin property is now owned by Danny Wallace.

found the distance to the McMillin corner be 1300 feet. Mr. Coleman testified that he located an old T post in a sunken roadbed when he measured approximately 1323 feet. Mr. Coleman further testified that he located a PK nail in the roadway when he measured 1323.01 feet plus an additional twenty-five feet.

## II. Standard of Review

The standard of review for a non-jury case is *de novo* upon the record. See Wright v. City of Knoxville, 898 S.W.2d 177, 181 (Tenn. 1995). There is a presumption of correctness as to the trial court's factual findings, unless the preponderance of the evidence is otherwise. See TENN. R. APP. P. RULE 13(d). For issues of law, the standard of review is *de novo*, with no presumption of correctness. See Ridings v. Ralph M. Parsons Co., 914 S.W.2d 79, 80 (Tenn. 1996).

## III. Law and Analysis

The sole issue presented for our review is whether the trial court erred in reforming and/or modifying the deeds of the parties which changed the boundary lines as established by said surveys. A court of chancery in Tennessee has the power to reform and correct errors in deeds produced by fraud or mistake. See Barnes v. Gregory, 38 Tenn. (1 Head) 230, 236 (1858). To be the subject of reformation, a mistake in a deed must have been mutual or there must have been a unilateral mistake coupled with fraud by the other party, such that the deed does not embody the actual intention of the parties. See Anderson v. Howard, 74 S.W.2d 387, 389-90 (Tenn. Ct. App. 1934); Pittsburg Lumber Co. v. Shell, 189 S.W. 879, 880 (Tenn. 1916). Reformation may be granted against the original parties, their privies, those claiming under them with notice, and third persons who will suffer no prejudice thereby. See 76 C.J.S. *Reformation of Instruments* § 54 (1994). As a general rule, however, a court of chancery may not reform a deed against a bona fide purchaser for value without notice. See Gibson v. Flynn, No. 88-120-II, 1988 WL 119257, at *3 (Tenn. Ct. App. Nov. 10, 1988) (citing Brier Hill Collieries v. H. Pile, 4 Tenn. App. 468, 478 (1926)).

In the case at bar, we must determine whether the Chases were bona fide purchasers for value without notice such that they are not subject to the equitable remedy of reformation. Whether a party is a bona fide purchaser precluding reformation depends on the particular facts and circumstances of each case. In order to constitute a bona fide purchaser, one must have (1) purchased the property with value; (2) taken the property without notice; (3) taken the property in good faith; and (4) would be prejudiced by reformation. See 76 C.J.S. *Reformation of Instruments* § 58 (1994). First, the Chases were purchasers for value of the 19.62 acres. Second, the Chases had neither actual nor constructive notice of the agreement between the Wallaces and the Butlers establishing a boundary line between the properties contrary to the deeds as written. The deed to the 19.62 acres did not reflect on its face such agreement between the Wallaces and the Butlers, and there is no evidence that the Wallaces informed the Chases of a boundary line contrary to that stated in the deed. Moreover, there is no evidence that the Chases had constructive notice of the agreement that should have put them on particular inquiry. Third, there is no evidence that the Chases purchased the property in anything but good faith. Finally, the Chases would be prejudiced by reformation of the deed. Mr.

Chase testified that he intended to purchase 19.62 acres. Mr. Coleman testified that reforming the deeds to reflect the boundary line as established by the Wallaces and the Butlers would give the Chases less than the 19.62 acres they intended to purchase. Because we find that the Chases were bona fide purchasers for value without notice, the chancery court erred in reforming the deeds of the parties.

As the deeds cannot be reformed against the Chases since we have determined that they are bona fide purchasers, the rights of the parties must be determined upon the deeds as written. We imply from the trial court's decision a finding that the deeds establish the southwest corner of the 6.84 acres/northwest corner of the 19.62 acres at the PK nail in the roadway. The trial court found that the parties intended the corner to be approximately twenty-five feet south of the PK nail. As a compromise, the trial court established the corner twelve and one half feet due south of the PK nail. We agree that the deeds establish the southwest corner of the 6.84 acres/northwest corner of the 19.62 acres at the PK nail in the roadway. Because we have found that the rights of the parties are to be determined based upon the deeds as written, the disputed boundary between the parties shall be established according to the deeds, beginning at the PK nail in the roadway. Accordingly, we reverse the trial court's reformation of the deeds of the parties and affirm the trial court's grant of a permanent easement for the existing driveway to the Chases.

## IV. Conclusion

For the foregoing reasons, the decision of the trial court is affirmed in part and reversed in part. Costs of this appeal are taxed against the Appellees, Chuck and Hilda Wallace, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE